UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MOUNTAINEERS FOUNDATION,<br><br>　　　　　　Plaintiff,<br>　v.<br>THE MOUNTAINEERS,<br><br>　　　　　　Defendant. | Case No. 2:19-cv-1819-RSL-TLF<br><br>ORDER ON MOTIONS TO EXCLUDE EXPERT TESTIMONY |

This matter comes before the Court on The Mountaineers Foundation's ("Foundation") motion to exclude portions of the testimony of Drew Voth (Dkt. 85) and The Mountaineers' motion to exclude the testimony of John Plumpe (Dkt. 96). This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth herein, the Court GRANTS the Foundation's motion to exclude portions of the testimony of Drew Voth (Dkt. 85) and DENIES The Mountaineers' motion to exclude the testimony of John Plumpe (Dkt. 96).

FACTUAL BACKGROUND

The Foundation has retained John Plumpe as an expert to:

- Review discovery produced in this matter including documents and information;
- Conduct research of publicly available information; and
- Develop opinions regarding monetary relief that may be available to The Foundation if liability is found against The Mountaineers.

ORDER ON MOTIONS TO EXCLUDE EXPERT
TESTIMONY - 1

Dkt. 97, Expert Report of John G. Plumpe ("Plumpe Report"), at 16.

Mr. Plumpe states that he was asked to provide an opinion regarding monetary relief available to The Foundation in the event that The Mountaineers is found liable for trademark infringement, unfair competition, and false designation of origin. Dkt. 97, Plumpe Report, at 16. For purposes of preparing the report, Mr. Plumpe assumed that liability would be found. *Id*. The Mountaineers has moved to exclude the testimony of Mr. Plumpe, arguing that he is not qualified to offer testimony regarding damages and that Mr. Plumpe's damage calculations are not helpful to the finder of fact. Dkt. 96, The Mountaineers' Motion to Exclude.

On June 1, 2021, The Mountaineers served the Foundation with an expert report prepared by Mr. Drew E. Voth. Dkt. 86, Declaration of Pam K. Jacobson, at ¶ 4; Dkt. 86-1, Expert Report of Drew E. Voth ("Voth Report"). The report states that Mr. Voth has been asked to assess damages suffered by the parties in this action as well as evaluate the Plumpe Report. Dkt. 86-1 at 4. Mr. Voth confirmed that he would not be offering an opinion on liability. *Id*.

The Foundation challenges the following statements from Mr. Voth's report, arguing that they are outside the scope of his expertise:

- "[E]vidence presented to me shows that donations received by The Mountaineers were intended for The Mountaineers rather than [Plaintiff]." Report at 8.
- "The Mountaineers sent tens of thousands of emails to its mailing lists where recipients were sent a link to the Alchemer (formerly SurveyGizmo) survey tool to confirm the intended recipient of their donations (i.e. The Mountaineers as opposed to [Plaintiff] or its predecessor) … I have seen the completed responses from 121 participants … Based on this information … none of The Mountaineers grant and contribution revenue should be apportioned to [Plaintiff]." *Id*. at 9.

ORDER ON MOTIONS TO EXCLUDE EXPERT
TESTIMONY - 2

- "These donor responses also support a finding that there is no reasonable nexus between the claimed grant and contribution revenue reported by The Mountaineers and the alleged unlawful acts." *Id.* at 10.
- "In the event that Defendant is found liable for Plaintiff's claims, the evidence made available to me shows none of Defendant's profits are attributable to the alleged unlawful acts." *Id.* at 3.
- "[Plaintiff's] fundraising activities, which include its website, operation of the Rhododendron Preserve, and email campaigns, would not be expected to result in donations to The Mountaineers in the form of grants, in kind donations, events, or sponsorships." *Id.* at 9.

Dkt. 85, The Foundation's Motion to Exclude, at 2 (citing Dkt. 86-1, Voth Report) (alterations provided in motion to exclude). The Foundation seeks an order precluding Mr. Voth from providing testimony regarding donor intent, consumer confusion, and/or donor confusion. Dkt. 85, The Foundation's Motion to Exclude.

## DISCUSSION

Under Fed. R. Evid. 702, the district court has broad discretion to assess relevance and reliability of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999). The trial court acts as a gatekeeper to ensure that proffered expert testimony is both relevant and reliable. *Kumho*, 526 U.S. at 147. Broad discretion is given to the trial court to admit or exclude expert testimony; expert evidence is properly excluded where "foundational facts demonstrating relevancy … are not sufficiently established …." *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996) (internal citations omitted).

Pursuant to Fed. R. Evid. 104(a), "[t]he court must decide any preliminary questions about whether a witness is qualified, a privilege exists, or evidence is admissible." In doing so, the Court is not bound by evidence rules, except those on privilege. *Id.* The district court screens the proffered evidence to determine whether the

ORDER ON MOTIONS TO EXCLUDE EXPERT
TESTIMONY - 3

expert's reasoning or methodology is scientifically valid and whether the expert evidence will assist the trier of fact to understand or determine a fact that is in issue for the specific claims and defenses. *Daubert*, 509 U.S. at 592-93. This inquiry must be connected to the specific facts presented in the case. *Kumho*, 526 U.S. at 150.

Under Rule 702, an expert witness who is "qualified … by knowledge, skill, experience, training, or education," is allowed to testify when: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The Court must conduct a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue… Many factors will bear on the inquiry, and … [there is not] a definitive checklist or test." *Daubert*, 509 U.S. at 592-93.

The flexible inquiry boils down to "scientific validity – and thus the evidentiary relevance and reliability – of the principles that underlie a proposed submission." *Daubert*, 509 U.S. at 594-95. The Court must conduct this review of proffered evidence on scientific evidence as well as evidence that is "non-scientific" – "'technical' and other 'specialized knowledge.'" *Kumho*, 526 U.S. at 141.

Under Fed. R. Evid. 104(a) and 702, the district court has broad latitude regarding the decision whether to admit expert testimony, and also with respect to the procedures by which to assess reliability. *United States v. Alatorre*, 222 F.3d 1098,

1104-05 (9th Cir. 2000). "The district court has discretion whether to hold a *Daubert* hearing in determining whether to admit expert testimony." *Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 979 (9th Cir. 2009). An evidentiary hearing will not be necessary if the parties' briefing on the expert's expertise and proposed testimony gives the court an "adequate record from which the court could make its ruling" on the admissibility of the proposed evidence. *Id.*

An evidentiary hearing on reliability under Rule 702 is not required if the proposed evidence is "unscientific speculation offered by a genuine scientist." *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067-69 (7th Cir. 1998) (Even though the expert was well-qualified, he did not conduct any testing on the products in question and therefore the trial court properly excluded the evidence after summary judgment briefing and declarations but without a full evidentiary hearing). If the district court excludes the evidence because it is more prejudicial than probative under Rule 403, this is an independent basis for excluding the proffered evidence, and the court is not required to also analyze the admissibility under Rule 702. *United States v. Benavidez-Benavidez*, 217 F.3d 720, 725-26 (9th Cir. 2000) (polygraph excluded as unduly prejudicial under Rule 403).

If the district court holds an evidentiary hearing under Rule 702, it may occur before trial or during trial; in some circumstances, the expert's qualifications may be explored in voir dire of the witness during trial with the jury present. *See, United States v. Alatorre,* 222 F.3d 1098, 1104-1105 (9th Cir. 2000) (jury present). Although there is not a bright-line rule about the precise type of hearing or timing of the hearing, it is important for the district court to conduct an appropriate inquiry, and make a sufficient

1 record of the findings and reasoning. *Barabin v. AstenJohnson, Inc.,* 740 F.3d 457, 463-
2 464 (9th Cir. 2014) (en banc) (trial court abused its discretion by allowing expert
3 testimony into evidence without first making a finding regarding relevancy or reliability
4 under *Daubert*; trial court's decision to admit expert evidence without any inquiry on the
5 record was reversible error), *overruled on other grounds, U.S. v. Bacon,* 979 F.3d 766,
6 769-770 (9th Cir. 2020) (en banc) (interpreting 28 U.S.C. § 2106 and holding that the
7 remedy for harmful error concerning Rule 702 may be a new trial, or a limited remand).
8 In a close case, the district court should allow the jury to decide difficult factual issues,
9 "relying on the safeguards of the adversary system . . . to 'attack[ ] shaky but admissible
10 evidence.'" *Hardeman v. Monsanto Company,* 997 F.3d 941, 962 (9th Cir. 2021)
11 (internal citations omitted).
12      The parties have briefed the issues and provided a factual record that allows the
13 Court to analyze the issue of the admissibility of both experts without conducting an
14 evidentiary hearing. *Millenkamp*. 562 F.3d at 979.
15      A.  <u>John Plumpe</u>
16      The Mountaineers move to exclude the testimony of John Plumpe arguing that
17 Mr. Plumpe is not qualified to offer testimony regarding damages and because Mr.
18 Plumpe's damage calculations are not helpful to the fact-finder. Dkt. 96.
19      Pursuant to 15 U.S.C. § 1117, the potential measures of monetary relief for a
20 successful claim of trademark infringement include: (1) the infringer's profits, (2) any
21 damages sustained by the prevailing party, and (3) the cost of the action.
22      The accounting of an infringer's profits is not synonymous with the award of
23 monetary damages, it is an equitable remedy subject to the principles of equity. *Reebok*
24
25

*Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015). Determining whether accounting of profits is appropriate, and the amount of profits, would be an equitable decision within the discretion of the trial court. *Fifty-Six Hope Road Music, Ltd.*, 778 F.3d at 1076.

The prevailing party need only prove the infringers' sales and the infringer bears the burden of proving all elements of costs or deductions claimed. 15 U.S.C. § 1117. The prevailing party does not need to establish actual confusion or harm to recover an accounting of profits, because this equitable remedy is not a measure of injury but rather a recognition of unjust enrichment and the need for deterrence. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011); 5 McCarthy on Trademarks and Unfair Competition §30:63.

Actual damages under Section 1117 are guided by traditional tort law principles. *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996). Trademark damages must be established with reasonable certainty. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) *superseded by statute on other grounds*. The prevailing party bears the burden of proving the fact, and amount, of damages. *Id*. The prevailing party can meet this burden by establishing direct injury, including lost profits resulting from the infringement. *Id*. Alternatively, "[b]ecause proof of actual damage is often difficult, a court may award damages based on defendant's profits on the theory of unjust enrichment." *Id.*

A party cannot recover both damages and an accounting of profits simultaneously if it would result in over-compensation. 5 McCarthy on Trademarks and

1  Unfair Competition § 30:73; *See, Nintendo of America, Inc. v. Dragon Pacific Int'l.*, 40
2  F.3d 1007, 1010 (9th Cir. 1994) ("[R]ecovery of both plaintiff's lost profits *and*
3  disgorgement of defendant's profits is generally considered a double recovery under the
4  Lanham Act.") (emphasis in original). "For example, where the parties directly compete,
5  over-compensation may result if plaintiff seeks both damages for lost profits on sales
6  diverted to the infringer *and* the profits made on those sales by the infringer." 5
7  McCarthy on Trademarks and Unfair Competition § 30:73 (emphasis in original).

8      The Mountaineers argues that Mr. Plumpe lacks the necessary qualifications that
9  would allow him to testify regarding donor intent, donor confusion, donor mistake or the
10 appropriate measure of damages. Dkt. 96 at 3-4. The Mountaineers do not challenge
11 Mr. Plumpe's qualifications in economic consulting or intellectual property valuation
12 calculations. Mr. Plumpe's report states that he was asked to provide opinions regarding
13 monetary relief available to the Foundation. Dkt. 97, Plumpe Report, at 16. For
14 purposes of the report, the Foundation asked Mr. Plumpe to assume that The
15 Mountaineers would be found liable. *Id.* at 16 n. 3.

16     Mr. Plumpe states that he evaluated "[The Mountaineers'] Audited Financial
17 Statements for the fiscal years 2011 through 2019, tax returns from the years 2011
18 through 2018, and documentation of individual contributions and donations for various
19 time periods from approximately October 1, 2009 through approximately September 30,
20 2015" to determine The Mountaineers' revenues. Dkt. 97, Plumpe Report, at 25. Mr.
21 Plumpe explained that he also excluded contributions and grants made to and by the
22 Braided River organization, which is affiliated with The Mountaineers, as well as
23 revenue from the Foundation to The Mountaineers. Dkt. 99, Declaration of K. Michael

Fandel (Sealed) at 6. Mr. Plumpe concludes by calculating The Mountaineers' revenue from contributions and grants from fiscal year 2011 to fiscal year 2019. Dkt. 97, Plumpe Report, at 27.

Mr. Plumpe's report does not opine on consumer confusion or on donor intent. Mr. Plumpe analyzed The Mountaineers' financial statements, tax returns and donation documentation to determine The Mountaineers' revenue in donations and grants from 2011 to 2019.

This information is relevant to the determination of damages in this action. If the Foundation prevails on the claims it has brought against The Mountaineers in this litigation, the Foundation would then have the burden of establishing The Mountaineers' profits. This information is relevant regardless whether the Foundation pursues an accounting of profits measure of damages or actual damages – under an unjust enrichment theory of damages. Therefore, the information provided in the report is material and relevant to the issue of determining The Mountaineers' profits and calculating the appropriate measure of damages in this action.

Next, The Mountaineers argues the Court should exclude Mr. Plumpe's report as not helpful to the fact-finder because it amounts to basic addition and subtraction. Dkt. 96 at 5-6. Yet, when the Court reviews Mr. Plumpe's report, it appears that Mr. Plumpe did more than simple addition and subtraction.

For example, Mr. Plumpe reports that he evaluated financial documents spanning from 2011 to 2019, including audited financial statements, tax return documentation and donation records. It appears that Mr. Plumpe's testimony would assist the trier of fact evaluate and understand these financial documents. Additionally,

even if Mr. Plumpe's report could be characterized as simply adding and subtracting numbers, the Federal Rules of Evidence do not require that proffered experts make complicated mathematical calculations to be admissible. *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1040 (8th Cir. 2011); *Microsoft Corp. v. Motorola, Inc.*, C10-1823, 2013 WL 4008822 at * 26-27 (W.D. Wash., Aug. 5, 2013).

Based on the foregoing, The Mountaineers' motion to exclude the testimony of John Plumpe is DENIED.

B. <u>Drew Voth</u>

The Mountaineers Foundation moves to exclude the testimony of Drew Voth arguing that Mr. Voth's report contains opinions related to subject matter outside the scope of his expertise, including "(A) the results of a consumer confusion survey conducted by [The Mountaineers] itself; and (B) the likelihood of consumer confusion in this case." Dkt. 85.

Mr. Voth's report states that he was retained to assess the damages suffered by both parties in this litigation. Dkt. 86-1, Voth Report, at 4. Mr. Voth states that his report assumes the parties are liable for the claims against them, but he offers no opinion on liability. *Id.* In addition, the report evaluates the Plumpe Report, and notes that the Plumpe Report does not establish a connection between donations made to The Mountaineers and any alleged consumer confusion. *Id.* at 9. The Voth Report also opines that the "evidence presented to [Mr. Voth] shows that donations received by The Mountaineers were intended for The Mountaineers rather than Keta." *Id.*

Next, Mr. Voth explains that The Mountaineers conducted a survey of donors to confirm that any donations made were intended for The Mountaineers. Dkt. 86-1, Voth Report, at 10. The report states:

> Based on my discussions with Mr. Vogl, Ms. Carrigan, and Ms. VanderLinden, and the Declaration of Tom Vogl, beginning the week of May 3, 2021, The Mountaineers sent tens of thousands of emails to its mailing lists where recipients were sent a link to the Alchemer (formerly SurveyGizmo) survey tools to confirm the intended recipient of their donations (i.e. The Mountaineers as opposed to Keta or its predecessor). To date, I have seen the completed responses from 121 participants and 100 percent of those respondents have identified The Mountaineers as their intended recipient. Based on this information, which is the only evidence of donor intent provided to me (other than the amounts as reported in The Mountaineers books and records and the issues addressed previously in this report), none of The Mountaineers grant and contributions revenue should be apportioned to Keta.

*Id.* Based on The Mountaineers' survey, Mr. Voth opined that the donor responses supported a finding "that there is no reasonable nexus between the claimed grant and contribution revenue reported by The Mountaineers and the alleged unlawful acts." *Id.* at 11.

The Voth Report also analyzes financial data to provide an accounting of The Mountaineers' expenses and deductions that should be applied to The Mountaineers' revenue. Dkt. 86-1, Voth Report, at 11-13. The Foundation does not challenge this portion of the Voth Report. Dkt. 85. The Foundation's motion is limited to Mr. Voth's opinion regarding consumer confusion and The Mountaineers' survey. Dkt. 85.

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). Determining an expert's reliability depends on the nature of the issue at hand, the witness's particular expertise and the subject of the testimony. *United States v.*

*Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). The expert's base of knowledge and their expertise in the relevant discipline must both be reliable. *Kumho*, 526 U.S. at 149.

Mr. Voth states that his expertise is in damage valuation as well as financial and damages analyses. Dkt. 86-1, Voth Report, at 5. During his deposition, Mr. Voth testified that his report is not an expert opinion report on likelihood of confusion and that he does not write expert reports on likelihood of confusion. Dkt. 86-1, Deposition of Drew Voth, at 1403. Mr. Voth also confirmed in the deposition that he is not a survey expert and does not typically perform surveys. *Id.* at 1450.

The portion of Mr. Voth's proffered testimony regarding donor intent is beyond the scope of Mr. Voth's expertise. Mr. Voth's report purports to evaluate evidence, including survey evidence, to determine whether the donors intended for their donations to go to The Mountaineers or the Foundation. But Mr. Voth expressly stated in his deposition that he was not an expert in determining likelihood of confusion or in preparing surveys. Additionally, Mr. Voth and The Mountaineers have not provided any evidence that Mr. Voth has expertise in analyzing donor intent or donor confusion. Based on the foregoing, Mr. Voth's testimony regarding donor intent and the donor survey are beyond the scope of Mr. Voth's expertise and should be excluded under Fed. R. Evid. 702.

The Court GRANTS the Foundation's motion to exclude portions of Drew Voth's testimony. The portions of the Voth Report discussing donor intent and The Mountaineers' survey are excluded. The remaining portions of the Voth Report, including his evaluation of the Plumpe Report, are not excluded.

CONCLUSION

The Mountaineers' motion to exclude the testimony of John Plumpe (Dkt. 96) is DENIED. The Foundation's motion to exclude portions of Drew Voth's testimony (Dkt 85) is GRANTED. The portions of the Voth Report discussing donor intent, likelihood of confusion and The Mountaineer's survey are excluded. All remaining portions of the Voth Report are not excluded.

Any objections, for consideration by Judge Lasnik, to this order must be served and filed within 14 days of this Order. FRCP 72(a).

Dated this 8th day of April, 2022.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge