UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOUNTAINEERS FOUNDATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE MOUNTAINEERS,<br><br>　　　　　Defendant. | Case No. C19-1819RSL-TLF<br><br>ORDER GRANTING<br>TEMPORARY<br>RESTRAINING ORDER |

This matter comes before the Court on "Defendant the Mountaineers' Motion for Temporary Restraining Order" (Dkt. # 139). The Court, having reviewed the submissions of the parties and the remainder of the record, finds as follows:

**I.   Background**

**A.  Procedural History of Easement Issue**

On April 8, 2022, Magistrate Judge Theresa L. Fricke issued a Report and Recommendation, recommending that the Court deny plaintiff, the Mountaineers Foundation's, motion for partial summary judgment (Dkt. # 87), and grant in part and deny in part defendant, the Mountaineers', motion for summary judgment (Dkt. # 91). Dkt. # 129 at 48. As relevant here, the Report concluded that the Mountaineers had a valid easement granting it access to the Kitsap Rhododendron Preserve (the "Preserve"), property owned by the Mountaineers Foundation. *Id.* at 49-50. Specifically, the alleged easement provided the Mountaineers with the right to use the Preserve for "historic and present uses," including "vehicle access necessary to prepare for and host theatrical productions at the beloved Kitsap Forest Theater." *Id.* at 39; Dkt. # 135 at 2.

ORDER GRANTING TEMPORARY RESTRAINING
ORDER - 1

The Report thus recommended that summary judgment be granted to defendant on its seventh counterclaim, which asks the Court to enter a declaratory judgment finding that the Mountaineers have an enforceable property right to continued use of the Preserve for historic and present uses. *Id.*

In its Objections to the Report & Recommendation, plaintiff argued that the Report "erroneously concludes the Mountaineers have an enforceable easement to continued use of the Preserve for historic and present uses." Dkt. # 130 at 3. Specifically, plaintiff noted that in Washington, any interest in real property, including easements, must be conveyed by a deed complying with the statute of frauds, not, as is the case here, by mere contract. *Id.* at 3-6. Defendant also submitted Objections to the Report & Recommendation, noting that the "statute of frauds does not apply where the easement is in writing, the easement was intended by the parties, and where there has been at least part performance by the parties." Dkt. # 132 at 3 (citing *Kirk v. Tomulty*, 66 Wn. App. 231, 237 (1992)).

The Court agreed with plaintiff's argument that typically, an easement can only be created under Washington law by a deed complying with the statute of frauds, and declined to adopt the Report and Recommendation's conclusion as to the existence of an easement. Dkt. # 34 at 2-3. However, the Court concluded that the issue raised by defendant – whether the alleged easement may be taken outside the statute of frauds by the doctrine of part performance – was not adequately briefed for the Court's consideration. Dkt. # 134 at 3. Accordingly, the Court requested additional briefing from the parties addressing how the doctrine of part performance applies to the property rights at issue. *Id.* The Court has yet to issue its ruling on the easement issue.

### B. The Kitsap Forest Theater

The Kitsap Forest Theater is a natural outdoor amphitheater located on land belonging to defendant the Mountaineers. Dkt. # 141 at 3. It is used by defendant to stage public theatrical performances – this summer season will be the 100th anniversary of the first performance at the Theater. *Id.* at 2-3. This summer, defendant plans to stage two theatrical productions: The Sound of Music and Seussical the Musical. *Id.* at 6. The Mountaineers have scheduled performances on

ORDER GRANTING TEMPORARY RESTRAINING
ORDER - 2

May 28, 29, June 3, 4, 10, 11, 17, 18 (The Sound of Music) and July 28, 30, August 5, 6, 12, 13, 19 & 20 (Seussical the Musical). *Id.* Children and adult volunteers began rehearsals in March, and a dress rehearsal for The Sound of Music is scheduled for May 27, 2023. *Id.* at 6-7.

The Theater is constructed into a hillside. *Id.* at 3. While accessing the Theater using only property owned exclusively by the Mountaineers is possible, doing so requires taking a "steep, narrow, winding woodland pathway that is approximately one quarter mile from the trailhead." Dkt. # 139 at 2. Given the limitations of this route, the Mountaineers constructed a road decades ago (the "Back Access Road") "that crosses several parcels of property owned by third parties to service the back stage area and permit disability access to the Theater." *Id.* at 3. One of those parcels is a lot now owned by plaintiff. *Id.* It is undisputed that the Mountaineers have historically and consistently used this road in connection with its theater productions. *See, e.g.*, Dkt. # 140-1 at 3-4. Whether this use was pursuant to longstanding contractual agreements between the parties as plaintiff contends, or an easement held by the Mountaineers as defendant contends, is the subject of the pending summary judgment motion before the Court. *See* Dkt. # 135.

In 2022, the parties entered into a temporary "access agreement" permitting reciprocal access to each party's property. Dkt. # 149-1 at 17-21. The stated purpose of the agreement was to "facilitate the operations of their programs on their respective properties" "in the spirit of cooperation." *Id.* at 20. The agreement specifically noted that it did not serve to "waive[] or release[] any claims [either party] may have against the other party or rights it may have in the property of the other party." *Id.* The agreement specifically allowed (1) defendant to use plaintiff's "Parking Parcel" "for the purpose of conducting its 2022 theater program" and (2) defendant to use the "Back Access Road . . . together with the trail from the Back Access Road . . . to access the back of [the Mountaineers'] theater . . . for the purpose of conducting its 2022 theater program." *Id.* at 18. The agreement expired on December 31, 2022. *Id.* at 20.

**C.  Motion for Temporary Restraining Order**

In its instant motion, defendant alleges that "throughout this litigation, the parties have maintained the status quo of access, both allowing the other to access their respective properties

ORDER GRANTING TEMPORARY RESTRAINING
ORDER - 3

1  while the litigation has unfolded." *Id.* at 1-2. However, on May 17, 2023, defendant discovered
2  that plaintiff "had installed new locks on the easement gates that prevent vehicle access to the
3  Theater and parking for theatrical performances." *Id.* at 4-5.[1]
4      On May 19, 2023, defendant the Mountaineers filed a motion for a temporary restraining
5  order, asking the Court to "maintain the *status quo ante*" and restrain plaintiff from taking any
6  actions that would impair, hinder, or prevent defendant from accessing and using the Kitsap
7  Forest Preserve as necessary to host its summer theatrical productions at the Kitsap Forest
8  Theater, pending the Court's ruling on the parties' motions for summary judgment. *Id.* at 2; Dkt.
9  # 139-1 at 3. On May 20, 2023, plaintiff the Mountaineers Foundation filed a notice of intent to
10 oppose the temporary restraining order. Dkt. # 144. Plaintiff filed its opposition on May 22,
11 2023. Dkt. # 146. Defendant, with leave of Court, *see* Dkt. # 145, filed a reply on May 23, 2023,
12 Dkt. # 153.
13      **II.   Discussion**
14         **A.  TRO Standard**
15     A TRO, as with any preliminary injunctive relief, is an extraordinary remedy that is
16 "never awarded as of right." *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24
17 (2008). A party seeking a TRO must establish: (1) a likelihood of success on the merits; (2) a
18 likelihood of irreparable harm in the absence of the preliminary relief; (3) a balancing of equities
19 tips in favor of the injunction; and (4) the injunction is in the public interest. *Id.* at 20; *see*
20 *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting
21 that the analysis for a TRO and a preliminary injunction are substantially identical), *overruled*
22 *on other grounds by Winter*, 555 U.S. 7.[2]

---

[1] According to plaintiff's response, the locks were changed on May 15, 2023. *See* Dkt. # 146 at 5.

[2] The Court notes that although the substantive analysis governing TROs and preliminary injunctions is the same, the procedures accompanying each are distinct. *Compare* Fed. R. Civ. P. 65(a) *with* Fed. R. Civ. P. 65(b). However, the most critical distinction is that a TRO may be issued without notice to the opposing party. *See* Fed. R. Civ. P. 65(b). Here, plaintiff received notice and had an

ORDER GRANTING TEMPORARY RESTRAINING
ORDER - 4

All four *Winter* elements must be satisfied. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022); *see also Winter*, 555 U.S. at 20-22 (rejecting an approach that permitted mere "possibility" of irreparable harm if there was a strong likelihood of success on the merits). However, the Ninth Circuit permits a "sliding scale" approach as to the first and third factors: namely, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the [movant] can support issuance of a preliminary injunction, so long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Court addresses each element below.

### 1. Irreparable Harm

The Court finds defendant has shown that "irreparable harm is likely to result in the absence of the injunction." *All. for the Wild Rockies*, 632 F.3d at 1135. In the absence of immediate relief, defendant "has no choice but to cancel theatrical performances," as defendant is "unable to stage performances without vehicle access to the backstage area of the Theater." Dkt. # 139 at 5, 8.[3] The upcoming performances represent the 100th anniversary of the Mountaineers' theater program, and have involved the work of "hundreds of volunteers." *Id.* at 8-9. Furthermore, "[t]housands of people attend these productions every year, and more than 1,500 tickets have already been sold." *Id.* at 8. The event is also one of defendant's "premier showcase opportunities" for raising awareness about the organization within the community, including among potential donors. *Id.*

---

opportunity to vigorously defend against the motion, *see* Dkts. # 144, 145, 146, 147, 148, 149, 150, 151, 152.

[3] Specifically, (1) defendant cannot "move necessary equipment and supplies without vehicle access, such as lighting and sound systems, or [equipment needed] to construct the stages"; (2) "vehicle access . . . is necessary in the event anyone (patron, crew, performers, etc.) has a medical emergency during a show" and first responders are called to the scene; (3) vehicle access is necessary to make the Theater accessible to "disabled patrons, performers, and crew"; and (4) vehicle access is necessary to deliver "portable disabled-accessible toilet facilities." Dkt. # 139 at 5.

ORDER GRANTING TEMPORARY RESTRAINING
ORDER - 5

Plaintiff argues that defendant has not shown irreparable harm[4] because (1) lost ticket sales and donations can be compensated with damages and thus cannot constitute irreparable harm and (2) claims of harm to goodwill and reputation are too speculative to constitute irreparable harm. *See* Dkt. # 146 at 13-14.[5]

However, courts have explained that "financial injury . . . will not constitute irreparable harm *if adequate compensatory relief will be available* in the course of litigation." *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984) (emphasis added); *see also Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201-02 (9th Cir. 1980) (finding no irreparable harm because "[t]he Coliseum's lost revenues would be compensable by a damage award should the Commission ultimately prevail on the merits"). Here, as defendant notes, both the pleadings and discovery are closed. *See* Dkt. # 139 at 9 n.4. Thus, "[i]f there are monetary damages, they likely cannot be recovered in this case." *Id.*

Additionally, in the cases plaintiff cites, reputational harm was found to be insufficient on the basis that it was too "speculative" and "not based on any factual allegations." *Goldie's*, 739 F.2d at 472. Here, in contrast, defendant has submitted a declaration explaining the importance of the performances to the organization's viability and longevity. *See Herb Reed Enterprises,*

---

[4] The Court notes that plaintiff appears to have conflated the standard a party must meet to establish standing with the irreparable harm analysis required for issuing preliminary relief. *See* Dkt. # 146 at 9 (citing *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 (9th Cir. 2011)). While *Vilsack* does address the "irreparable harm" standard, it does so at pages 1172-74. In the preceding section (pages 1171-72), the court discusses whether plaintiff has standing to bring its claim. Accordingly, here, the Court does not address plaintiff's arguments that defendant has failed to demonstrate causation or redressability. *See* Dkt. # 146 at 12-13, 14.

[5] Plaintiff also argues that defendant has failed to establish irreparable harm because of the purported delay in seeking an extension of the 2022 access agreement. Dkt. # 146 at 11. However, the cases cited by plaintiff in support of this contention discuss delays in seeking *preliminary relief*. *See Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *Dahl v. Swift Distrib., Inc.*, No. C10-551SJO, 2010 WL 1458957, at *4 (C.D. Cal. 2010) (finding that eighteen-day delay in filing TRO application "implie[d] a lack of urgency and irreparable harm"). Here, defendant discovered the locks on May 17, 2023, and filed the TRO on May 19, 2023.

ORDER GRANTING TEMPORARY RESTRAINING
ORDER - 6

*LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (explaining that "[e]vidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm"). Specifically, defendant has explained that audience members who "return year after year to see shows develop a deep appreciation for the impact of the Theater and the Mountaineers, and donate money to the organization and its mission after attending shows," and families attending shows often learn about defendant's "summer camps and educational programs for children" as audience members. Dkt. # 141 at 8. Additionally, plaintiff fails to address the clear harm to the hundreds of volunteers – including performers – who have been rehearsing since March in anticipation of these scheduled performances. The Court finds that the consequences of cancelling the scheduled performances constitutes irreparable harm to the Mountaineers.

### 2.  Balancing of Equities

The Court finds that the balance of equities "tips sharply towards" defendant. *All. for the Wild Rockies*, 632 F.3d at 1135. In analyzing this element, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations omitted).

Here, as discussed above, defendant faces irreparable harm if preliminary relief is not granted, as it will be forced to cancel its scheduled summer performances. Plaintiff also claims that it will face injuries, including (1) exposure to liability from unsafe uses of the Back Access Road for disability access; (2) invasion of property rights; and (3) damage to the conservancy nature of the preserve. Dkt. # 146 at 15.

While the Court understands plaintiff's concerns about the safety of disabled individuals, it notes that defendant has been providing disability access to the Theater using this route for decades without incident. Dkt. # 156 at 2; Dkt. # 153 at 9. Additionally, defendant has explained its procedure for assisting disabled patrons, which includes bus transportation to a backstage area 300 feet from the Theater seating area and volunteer assistance from the backstage area to the audience member's seat. Dkt. # 156 at 2. In light of these facts, the Court concludes that the

required security bond and proof of insurance (discussed below) effectively mitigate plaintiff's liability concerns.

As to plaintiff's argument regarding its property rights, this argument is somewhat undermined by the fact that the claimed property right is the subject of the instant litigation (on which the Court has yet to issue a ruling). Moreover, the case cited by plaintiff in support of its argument makes clear that "a court's equity power transcends the mechanical application of property rules." *Proctor v. Huntington*, 169 Wn. 2d 491, 501 (2010).

Finally, plaintiff's concerns about potential damage to the conservancy nature of the preserve appear to rest on events that happened either over a decade ago, *see* Dkt. # 146 at 16 (discussing event that took place in 2011), or that had no connection to defendant's theater performances, *see id.* (discussing instances where members of defendant organization cut back native plants on plaintiff's property with "machete knives" and children's summer camp participants "creek stomping" in a salmon-bearing stream). The Court is confident that it can reduce the risk of potential harm by tailoring the preliminary relief to provide defendant with only the access required to stage its scheduled performances, which is consistent with the parties' historical use of the land.

### 3. Public Interest

The Court finds that the public interest militates in favor of granting preliminary relief. Whereas the balance of equities focuses on the parties, "[t]he public interest inquiry primarily addresses impact on non-parties," and takes into consideration "the public consequences in employing the extraordinary remedy of injunction." *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 931-32 (9th Cir. 2003) (citations omitted).

Here, thousands of members of the public will attend the scheduled performances if they are not canceled, and hundreds of volunteers will see their work come to fruition. Furthermore, the Court agrees with defendant that "providing safe and reliable disability access is in the public interest." Dkt. # 139 at 10. Plaintiff's primary argument to the contrary is that the proposed access route is *not* safe, *see* Dkt. # 146 at 20, however, as discussed above, these concerns are minimized by the historical success of defendant's approach.

ORDER GRANTING TEMPORARY RESTRAINING
ORDER - 8

### 4. Likelihood of Success on the Merits

Because defendant has established a likelihood of irreparable harm, that preliminary relief is in the public interest, and that the balance of hardships tips decidedly in its favor, the likelihood-of-success prong of the inquiry focuses on whether defendant has raised "serious questions going to the merits." *All. for the Wild Rockies*, 632 F.3d at 1131; *see also Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (explaining that the "serious questions" inquiry is "a lesser showing than likelihood of success on the merits"). Here, it has.

A brief review of the procedural history of this case – namely, the fact that this Court declined to adopt the Report & Recommendation's initial conclusion and asked the parties for supplemental briefing on the issue – demonstrates that defendant has met its burden of showing it has raised a "serious question going to the merits"

### B. Prohibitory or Mandatory Injunction

A preliminary injunction may be either prohibitory or mandatory. "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (internal quotations and alterations omitted). The "status quo" means "the last, uncontested status which preceded the pending controversy." *Regents of the Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 514 (9th Cir. 1984). The "last uncontested status" is not measured from the time at which the first dispute at issue in a case arose, but from the time the complaint was filed. *See N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010).

In contrast, a mandatory injunction "orders a responsible party to 'take action.'" *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996). Mandatory injunctions are disfavored and "are not granted unless extreme or very serious damage will result." *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980). They "are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.*

Here, plaintiff attempts to frame defendant's motion as a request for a mandatory injunction, *see* Dkt. # 146 at 18-20, but largely relies on language included in past emails,

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 9

wherein the parties were considering the possibility and scope of a new access agreement, rather than the language in defendant's instant motion to support this stance. At the time the complaint was filed – and apparently throughout the litigation until last week – defendant has been able to access plaintiff's property in staging and performing plays at the Theater. The requested preliminary relief would simply prohibit plaintiff from unilaterally cutting off defendant's access to the contested easement before the Court has had a chance to rule on the easement issue. Accordingly, the Court finds that the requested relief, properly considered, is prohibitory and does not need to meet the heightened standard required for mandatory injunctions.[6]

As the Court finds that defendant has demonstrated it is entitled to preliminary relief under the Ninth Circuit's "sliding scale" test, defendant's motion is granted. The Court enjoins and restrains plaintiff from impairing or impeding defendant's access to the "Parking Parcel" and "Back Access Road" as described in the parties' 2022 Reciprocal Access Agreement from May 25, 2023 to August 31, 2023. The Court will issue its decision on the merits of the supplemental briefing on September 1, 2023.

### C. Security Bond

---

[6] Additionally, plaintiff's argument that the requested preliminary relief is improper because it "is related to new allegations of misconduct—distinct from the allegations at issue in the complaint" is unavailing. Dkt. # 146 at 21. Here, the underlying complaint includes defendant's request for a declaratory judgment from this Court, recognizing its alleged easement over plaintiff's property. The alleged misconduct at issue in the instant motion is plaintiff blocking defendant from accessing the alleged easement. Accordingly, the requested relief is clearly related to the allegations in the complaint. Plaintiff's cited cases are inapposite. *See Padilla v. Nevada*, No. C08-410-LRH-RAM, 2011 WL 2746653, at *8 (D. Nev. June 3, 2011) (denying prisoner's request for preliminary injunction relating to his access to legal materials where the underlying suit concerned claimed violations of the Eighth Amendment in connection with defendants' denial of medication and treatment for prisoner's skin condition, and denial of his transfer to a facility in a warmer, more humid climate); *Mitchell v. Haviland*, No. C09-3012JAM-KJN, 2014 WL 458218, at *2 (E.D. Ca. Feb. 4, 2014) (denying prisoner's request for preliminary injunction where "inmate's motion for injunctive relief had nothing to do" with "plaintiff's challenge to concrete actions taken in 2008 and 2009" by defendants); *Burton v. Paramo*, No. C17-1953BEN-KSC, 2017 WL 6048805, at *4 (S.D. Ca. Dec. 5, 2017) (finding prisoner asserting challenges to a behavioral modification program and due process claims in his Complaint could not subsequently seek preliminary relief "preventing his 'retaliatory transfer'" as there was no relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint).

ORDER GRANTING TEMPORARY RESTRAINING
ORDER - 10

Pursuant to Rule 65, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The district court retains discretion "as to the amount of security required, *if any*." *Johnson v. Couturier,* 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citations omitted) (emphasis in the original).

Here, plaintiff asks the Court to impose a $5,000,000.00 bond in light of plaintiff's "substantial risk . . . of liability" and "environmental risk to the Preserve." Dkt. # 146 at 22. Defendant argues that no security should be required, "particularly in light of evidence that the plays at the Theater have been performed for a century with no significant harm or loss" and given that "both The Foundation and The Mountaineers are insured, in amounts far in excess of the bond amount." Dkt. # 153 at 10. In light of defendant's general liability insurance policy, which provides coverage of $10,000,000.00 per occurrence, with an additional $5,000,000.00 per accident for automobile liability, *see* Dkt. # 156 at 2; Dkt. # 156-1 at 9, the Court agrees that the risk of liability or environmental damage appears to be low, and thus imposes a $10,000.00 bond.

### III. Conclusion

For all the foregoing reasons, defendant's motion (Dkt. # 139) is GRANTED:

1. Plaintiff and its officers, agents, servants, employees, attorneys, and persons acting in concert or participation with it are hereby ENJOINED and RESTRAINED from:

    (a) impairing or impeding defendant and its agents, employees, contractors, permittees and invitees, from accessing or using plaintiff's "Parking Parcel" (as defined in the parties' 2022 Reciprocal Access Agreement) between May 25, 2023 and August 31, 2023 for the purpose of conducting its 2023 theater program and

    (b) impairing or impeding defendant and its agents, employees, contractors, permittees and invitees, from accessing or using the "Back Access Road" (as defined in the parties' 2022 Reciprocal Access Agreement) to and over plaintiff's Back Access Parcel, together with the trail from the Back Access Road, to access

the back of defendant's theater between May 25, 2023 and August 31, 2023 for the purpose of conducting its 2023 theater program.

2. Defendant is ORDERED to post bond in the amount of $10,000.00 within fourteen (14) days of the date of this Order. *See* Fed. R. Civ. P. 65(c).

IT IS SO ORDERED.

DATED this 24th day of May, 2023.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 12